IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                               *
SHAHID POPO,
                               *
     Plaintiff,
                               *
        v.                          CIVIL NO.:  WDQ-08-1190
                               *
GIANT FOODS LLC,
                               *
     Defendant.
                               *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Shahid Popo sued Giant Food LLC ("Giant") for violating Title VII of the Civil Rights Act of 1964.[1]  Pending is Giant's motion for summary judgment.  For the following reasons, the motion will be granted.

I.   Background[2]

Popo, a black man of West Indian origins, is a Rastafarian.[3] He began working at Giant in the deli department in 1994.

---

[1]  42 U.S.C. §§ 2000e *et seq.* (2006).

[2]  For this motion, the Court will draw inferences from the facts in the light most favorable to Popo, the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zennith Radio Corp.*, 475 U.S. 574, 587 (1986).

[3]  "Rastafarianism is 'a religious movement among black Jamaicans that teaches the eventual redemption of blacks and their return to Africa, employs the ritualistic use of marijuana, forbids the cutting of hair, and venerates Haile Selassie as a god.'" *Golphin v. Branker*, 519 F.3d 168, 176 (4th Cir. 2008)(*quoting Merriam-Webster's Collegiate Dictionary* 1031 (11th ed.2004)).

Shahid Popo Dep. 75:15-18, Mar. 31, 2009.  On December 31, 1994, Popo was terminated for poor attendance.  *See* Pl.'s Mot. Ex. 2. In May 1996, Giant rehired Popo as a salad bar clerk.  *Id*. 107:15-18.[4]  He was promoted to grocery clerk and then to night grocery captain.  *Id*.

In April 1998, Popo was suspended for three days for "inappropriate workplace behavior" that involved "alleged threats, foul language, name calling and a pushing."  Def.'s Mot. Ex. 7.  The disciplinary notice issued after this incident warned Popo that "[t]he next violation of this policy [would] result in termination."  *Id*.  In February 2000, Popo received a second disciplinary notice when he refused to follow the assistant manager's instructions and was sent home for insubordination.  *Id*. Ex. 8.  This notice warned that "any further action of this kind will result in a two day suspension . . . up to termination."  *Id*.

In March 2003, Popo was promoted to grocery manager at Giant's store in Riverdale, Maryland.  Pl.'s Dep 112:7-16;

---

[4]  On May 24, 1996, Popo signed Giant's Statement of Policy for Store Associates.  Pl.'s Mot. Ex. 6.  This statement listed "deliberately damaging Company property" and "[d]isorderly conduct, roughhousing, and/or fighting on the premises" among the offenses that could result in termination.  *Id*.  Popo knew that Giant could fire him for getting in a fight, threatening to kill someone, using profane language, or walking off the job. Pl.'s Dep. 105:20-106:22.

Def.'s Mot Ex. 21.  As grocery manager, Popo was responsible for store cleanliness, inventory, scheduling his crew, customer service, merchandising, and store inspections.  Pl.'s Dep. 114:15-115:17; Robert Wink Dep. 15:8-22, Apr. 15, 2009.  In April 2003, Popo was transferred to Giant's store in Silver Spring ("Store 114") because he was newly promoted, and he would only have to manage a staff of four at this smaller store. Colleen MacDaniel Aff. ¶ 5, August 13, 2009.

As a grocery manager at Store 114, Popo reported to store manager Jeanne Davis,[5] district manager Colleen MacDaniel,[6] and grocery specialist Robert Wink.[7]  In May 2003, Davis noticed that Popo was over ordering and keeping too much stock in the back room.  Davis Dep. 17:14-18:2.  In early June 2003, Davis warned Popo about over ordering, the uncleanliness of his department, and not using his staff effectively.  Davis Dep. 19:16-17,

---

[5]  Davis became the store manager of Store 114 in May 2003. Jeanne Davis Dep. 14:3-7, Apr. 1, 2009.

[6]  MacDaniel supervised several stores and the grocery managers in her district, which included Store 114.  MacDaniel Aff. ¶ 2.

[7]  Wink became a grocery specialist with Giant in July 2003 and was responsible for overseeing the 48 Giant stores in three districts (the "Northern stores"), which included Store 114. Robert Wink Dep. 10:6-11, 13:1-5, Apr. 15, 2009.  Before his promotion, Wink had received a disciplinary notice for "improper workplace behavior" after he used foul language during a dispute with a co-worker in December 2000.  Wink Dep. 68:6-11; Pl.'s Opp. Ex. 2 (Popo's exhibits are unlabeled; this document, titled "Disciplinary Notice," was issued to Wink).

25:15-27:21.  MacDaniels also counseled Popo about his
performance deficiencies at Store 114.  MacDaniel Aff. ¶ 8.

On June 9, 2003, MacDaniels arrived at Store 114 for an
inventory inspection.  *Id*. ¶¶ 10, 11.  Popo knew about this
inspection months in advance but was unprepared.  Pl.'s Dep.
125:7-126:10. MacDaniels found freight on the floor and
merchandise that had not been properly counted.  Pl.'s Dep.
126:14-128:19; MacDaniels Aff. ¶ 13.  When MacDaniels expressed
her displeasure to Popo, he became angry, called her a "racist,"
and left the store.  Pl.'s Dep. 130:13-20; MacDaniels Aff. ¶ 14.
Popo did not return to work for several weeks.  MacDaniels Aff.
¶ 16.

On June 18, 2003, Popo wrote to Giant's fair employment
manager, Bart Plano, about his problems with MacDaniels.  Def.'s
Mot. Ex. 9.  Popo explained the June inventory incident and said
that MacDaniels was "always complaining and criticizing" his
work, made him feel "disrespected and unappreciated," and
treated him as an inferior because of his race.  *Id*.; Bart Plano
Aff. ¶¶ 4-6, August 13, 2009.

In a July 8, 2003 letter, Giant's human resources
department told Popo to contact Davis immediately, or he would
be terminated.  Def.'s Mot. Ex. 10.  In a July 21, 2003 letter,
Popo's therapist, Joy Berry, informed Giant that Popo had been
in counseling since June 27, 2003 and would be unable to return

4

to work until August 1, 2003.  Def.'s Mot. Ex. 11.  Berry
requested that Popo "be assigned to a new store under different
district managers because of the alleged harassment and
discrimination" against him.  *Id.*

On August 1, 2003, Popo returned to work at Store 114.
Plano Aff. ¶ 10.  On August 4, 2003, Popo met with Davis and
district human resources manager Rod Bangert to discuss the June
inspection incident and his concerns about MacDaniel.  Davis
Dep. 42:4-15; Plano Aff. ¶ 11.  During this meeting, Popo
requested a transfer to another store.  *Id.* ¶ 13.  Bangert
refused Popo's request, telling him that dislike of co-workers
and management at Store 114 was not a reason for transfer. Davis
Dep. 43:9-16.[8]

On August 29, 2003, Wink visited Store 114,[9] and Popo asked
him for a transfer.  Wink Dep. 22:2-4, 22:20-4.  Wink did not
know about the previous denial of Popo's transfer request and
agreed to investigate.  *Id.* 23:16-20.  Later that day, Bangert

---

[8] A meeting to discuss Popo's concerns and transfer request was
scheduled for August 19, 2003, but Popo canceled that meeting.
Plano Dep. ¶¶ 14-15.

[9]  Wink's first visit to tour Store 114 had been in early August
2003.  Wink Dep. 14:11-21.  He found the store to be dirty,
poorly merchandised, and disorganized.  *Id.* 18:15-19:1.  When
Wink returned on August 29, he found that cleanliness and
merchandising had improved.  Wink Dep. 22:2-19.

told Wink that the transfer request had been approved and asked Wink to tell Popo.  *Id*. 30:1-8.

Davis and Wink were sharing the manager's office during this visit; both relayed the transfer news to Popo.  Davis Dep. 49:4-15.  Wink told Popo that the performance standards and expectations for his improvement would remain unchanged at the new store.  *Id*. 70:69:6-18; Wink Dep. 40:13-19.  Popo became angry when he was told that his new managers would "be watching" him.  Popo Dep. 169:2-12.  A shouting match ensued; Wink told Popo that he was suspended and instructed him to leave the store.  Davis Dep. 72:7-15.

Wink and Popo then fought.[10]  After the men were separated, Davis called the police, and Wink called store security.  Wink Dep. 49:19-50:2.  Before either arrived, Popo left the store, knocking over displays and damaging merchandise on his way out.[11]

---

[10] Popo asserts that he was forced to defend himself against Wink's aggression.  Pl.'s Opp. Ex. 1 at 2 (Popo's assertion is in his document titled "In My Own Words").  He says that Wink lured him into a storage room and attacked him. *Id*. at 2-3.  Giant asserts that Popo initiated the fight when he pulled a box cutter from his cargo pants and attempted to stab Wink.  Davis Dep. 77:3-7, 79:7-22.  Wink says that he knocked the box cutter out of Popo's hand and placed him in a headlock to restrain him. Wink Dep. 47:6-18; 49:16-19.

[11] Yolanda Jackson Dep. 38:13-18, June 11, 2009. Popo does not remember whether he destroyed any merchandise before leaving the store.  Popo Dep. 190:6-191:3.

As he was leaving, Popo threatened to kill Wink and Davis.[12]
Popo Dep. 189:13-14; Def.'s Mot. Exs. 17 & 19.   Popo went to
Holy Cross Hospital where he was treated for his injuries.
Pl.'s Dep. 191:15-16; Pl.'s Opp. Ex. 1 at 3.

After investigating the fight,[13] Giant held Popo's grievance
meeting on October 10, 2003.   Plano Dep. ¶ 23.   At that meeting,
Popo denied using foul language, threatening Wink and Davis, and
attempting to assault Wink with a box cutter.   *Id*. ¶ 24.   But
Popo failed to provide corroboration for his version of the
fight.   *Id*.   Giant upheld Popo's suspension and terminated his
employment for his "threatening and intimidating behavior"
toward Wink and Davis.   *Id*. ¶ 25.[14]

Popo opposed his termination and attended a "Step 2"
grievance meeting on November 30, 2003.   *Id*. ¶ 26.   At that
meeting, the Montgomery County Police arrested Popo on first and
second degree assault and disorderly conduct charges related to

---

[12] Popo asserted that, after the attack, Davis and Wink taunted
and laughed at him until a customer who had witnessed the event
helped him out of the store.   Popo Dep. 189:4-11.

[13] Plano conducted this investigation and interviewed Giant
employees about the August altercation.   Plano Aff. ¶ 19.   He
found Wink and Davis's stories were consistent that Popo had
"behaved in an unprofessional manner toward Wink, used foul
language, threatened to kill both [of them], attempted to stab
Wink in the chest with a six-inch box cutter, and knocked over
and destroyed store merchandise."   *Id*. ¶¶ 20-21.

[14] Derek Valencia signed Popo's separation notice, terminating
him effective October 10, 2003.   Def.'s Mot. Ex. 12.

his fight with Wink.  *Id*. ¶¶ 26-27.  Giant denied Popo's
grievance and upheld his termination.  *Id*. ¶ 28.

On December 17, 2003, Popo filed a complaint against Giant
for retaliation and discrimination based on his race, religion,
and national origin with the Maryland Commission on Human
Relations.  Def.'s Mot. Ex. 13.  This complaint was denied on
September 25, 2007.  *Id*. Ex. 14.  On February 8, 2008, the EEOC
dismissed Popo's complaint and issued a right to sue letter.
Paper No. 4.  On May 8, 2008, Popo sued Giant.  Paper No. 1.  On
August 14, 2009, Giant filed a motion for summary judgment.
Paper No. 33.

II.  Analysis

A.   Request to Strike Popo's Opposition

Local Rule 105.2(a) requires that "memoranda in opposition
to a motion shall be filed within [14] days of the service of
the motion."  The respondent is given an additional three days
if service is by mail.  Fed. R. Civ. P. 6(e); *see also H&W Fresh
Seafoods, Inc. v. Schulman*, 200 F.R.D. 248, 252 (D. Md. 2000).
The court may, in its discretion, allow an untimely opposition
when the delay is short, and the moving party fails to show that
it was harmed by the delay.  *See H & W Fresh*, 200 F.R.D. at 252.

Here, Giant has argued that Popo's opposition brief should
be stricken because he did not show good cause for its untimely

filing.[15]  Because Giant has not been harmed by the three-day

filing delay, the Court will deny the request to strike Popo's

opposition.

    B.   Motion for Summary Judgment

       1.   Standard of Review

Under Rule 56(c), summary judgment "should be rendered if

the pleadings, the discovery and disclosure materials on file,

and any affidavits show that there is no genuine dispute as to

any material fact and that the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(c).  In considering a

motion for summary judgment, "the judge's function is not . . .

to weigh the evidence and determine the truth of the matter but

to determine whether there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  A

dispute about a material fact is genuine "if the evidence is

such that a reasonable jury could return a verdict for the

nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most

favorable to . . . the nonmovant, and draw all reasonable

inferences in h[is] favor," *Dennis v. Columbia Colleton Med.*

---

[15]  On September 18, 2009, the Court granted Popo's motion for "a
two week extension . . . and if applicable, an additional two
weeks" to file his opposition.  Paper No. 39.  Construed in the
light most favorable to Popo, that order set the deadline to
file as October 16, 2009.  Popo filed his opposition on October
19, 2009.  Paper No. 40.

*Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (*quoting Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

The Court construes *pro se* civil rights complaints liberally.  *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), *cert. denied*, 439 U.S. 970 (1978).  They are held to a less stringent standard than those drafted by attorneys.  *Id.*

      2.   Disparate Treatment Claim

Popo argues that Giant engaged in disparate treatment when it fired him after the August altercation but allowed Wink to continue as an employee.  Pl.'s Opp. 2.  Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.A. § 2000e-2(a)(1).  Popo contends that Giant treated him differently than Wink, a white male employee, because he is black, West Indian, and Rastafarian.  Pl.'s Opp. 1-2.

Under Title VII, a plaintiff may establish a *prima facie* case of disparate treatment by direct or circumstantial

10

evidence.  *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003); *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 342 (4th Cir. 2008).[16]  To prove a Title VII violation by circumstantial evidence, Popo may proceed under the three-step scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), refined in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  First, Popo must make a *prima facie* case of disparate treatment by showing that (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was meeting his employer's legitimate expectations; and (4) similarly situated employees outside his class received more favorable treatment.  *Prince-Garrison v. Maryland Dept. of Health and Mental Hygiene*, 317 Fed. Appx. 351, 353 (4th Cir. 2009) (*citing Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007), *cert denied*, 128 S. Ct. 955 (2008)).[17]

Similarly situated employees are alike "with respect to performance, qualifications, and conduct."  *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000); *see also Forrest v. Transit Management of Charlotte, Inc.*, 245 Fed. Appx. 255,

---

[16]  Because Popo has presented no direct evidence of discrimination, he must establish a claim by circumstantial evidence.

[17]  The burden of showing a *prima facie* case is not onerous, *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. at 253, and is "relatively easy," *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

257 (4th Cir. 2007).  Generally, the compared employees must

have dealt with the same decision-maker[18] and engaged in conduct

of comparable seriousness.[19]  *See Radue*, 219 F.3d at 617-18.  A

supervisor and his subordinates are, by definition, not alike in

qualifications.[20]  "[A]n employee need not show complete identity

in comparing himself to the better treated employee, but he must

show substantial similarity."  *Id.* at 618.[21]

After the fight, Popo was suspended and ultimately

terminated after a hearing.  The evidence does not show whether

the same decision-makers evaluated Wink's conduct.  Wink and

---

[18] "If different decision-makers are involved, employees are
generally not similarly situated."  *Forrest*, 245 Fed. Appx. at
257.

[19] *Ray v. CSX Transp., Inc.*, 189 Fed. Appx. 154, 160 (4th Cir.
2006)("[B]ecause the coworkers charged along with [the
plaintiff] were not engaged in conduct of comparable serious-
ness" he failed to show that the defendant discriminated by
punishing him more severely than the others.).

[20] *See Trusty v. Maryland*, 28 Fed. Appx. 327, 329 (4th Cir.
2002) (plaintiff and her subordinate were not "similarly
situated"); *Oguezuonu v. Genesis Health Ventures, Inc.*, 415 F.
Supp. 2d 577, 585 (D. Md. 2005)("[B]y definition, [the
plaintiff's] subordinates are not 'similarly situated'
employees").

[21] Here, the parties dispute the severity of Popo's conduct
compared with that of Wink during the fight.  It is undisputed
that both men engaged in the argument, raised their voices, and
struggled.  Each had previously received a disciplinary notice--
Wink in December 2000 and Popo in April 1998 and February 2000.
Drawing all inferences in favor of Popo, the Court will assume
the two men had substantially similar conduct and disciplinary
histories.

Popo, however, had dissimilar qualifications.  As a grocery specialist, Wink was responsible for overseeing the grocery managers of numerous Giant stores.  Popo was one of the grocery managers supervised by Wink.  As Wink was not similarly situated to Popo, his subordinate, he cannot be used as a comparator to show disparate treatment.

Had Popo established his prima facie case, Giant's non-discriminatory reasons for firing him would remain.  Giant has presented evidence that Popo was fired because of his attack on Wink, his threats of physical violence toward Wink and Davis, and his destruction of store merchandise.  *See* Pl.'s Mot. 17.  Popo argues that his conduct was defensive and not sufficiently severe to warrant immediate termination.  Pl.'s Opp. 3-4.

The parties disagree about Giant's decision to fire Popo--but not Wink--after the fight.  "The crucial issue in a Title VII action is an unlawful discriminatory motive for a defendant's conduct, not the wisdom or folly of business judgment."  *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 383 (4th Cir. 1995).[22]  The federal courts "do[] not sit as a kind of

---

[22] "It is the perception of the decision maker which is relevant not the self-assessment of the plaintiff."  *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)(internal quotation omitted).  Here, Giant investigated the August altercation and held a grievance meeting so Popo could present his case.  After the hearing, Giant determined that Popo's conduct warranted termination.

super-personnel department weighing the prudence of employment
decisions made by [employers] charged with employment
discrimination." *DeJarnett v. Corning Inc.*, 133 F.3d 293, 299
(4th Cir. 1998).  Here, Popo has presented no evidence that
Giant's decision-making process was discriminatory; he has
failed to show that the reasons Giant provided for his
termination were a pretext for disparate treatment.[23]

  3.   Retaliation Claim

Title VII makes it unlawful for an employer to retaliate
against an employee because he has opposed an unlawful practice
under Title VII.   42 U.S.C.A. § 2000e-3(a).  Popo alleges that
Giant fired him in retaliation for his June 2003 internal
complaint of discrimination.  Because Popo has presented no
direct evidence of retaliation, he must establish his claim by
circumstantial evidence.[24]  To state a *prima facie* case of
retaliation, Popo must show that (1) he engaged in protected
activity, (2) his employer took a materially adverse action
against him, and (3) there is a causal connection between the
protected activity and the adverse action.  *Lettieri v. Equant*

---

[23]  Popo's claim must fail because liability attaches only for
decisions motivated by illegal animus. *See Bell v. Town of Port
Royal*, S.C., No. 9:06-1095-PMD-RSC, 2008 WL 1816579, at *3
(D.S.C. Jan. 30, 2008).

[24]  The burden-shifting scheme of *McDonnell Douglas* also applies
to Title VII retaliation claims.

*Inc.*, 478 F.3d 640, 649-50 (4th Cir. 2007)(*quoting von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001)).

Here, Popo has not established a causal connection between his June 2003 complaint and Giant's decision to terminate him. Plano and Bangert have testified that Giant terminated Popo because of "his threatening and intimidating behavior toward [Wink and Davis]."[25]  The separation notice signed by Valencia indicates that Popo was fired for his "threatening and intimidating behavior" in violation of Giant's company policy. Popo's unsupported assertion is insufficient to show that his June 2003 complaint motivated his termination.  The proximity between Popo's June 2003 internal complaint and his October 2003 termination is also insufficient to establish a causal connection between the two events.[26]  Because Popo has failed to show this connection, he has not established a *prima facie* case; his retaliation claim must fail.

---

[25]  Plano Aff. ¶ 25; Bangert Aff. ¶ 19.

[26]  *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'"); *see, e.g., Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed. Appx. 229, 233 (4th Cir. 2006)(3-to-4 month period insufficient); *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997)(3-month period insufficient); *Hughes v. Derwinski,* 967 F.2d 1168, 1174-1175 (7th Cir. 1992)(4-month period insufficient).

III. Conclusion

For the reasons discussed above, Giant's motion for summary judgment will be granted.


<u>December 11, 2009</u>                    _____/s/_____
Date                                      William D. Quarles, Jr.
                                          United States District Judge